# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

10/29/2014 at 03:28:00 PM

Clerk of the Superior Court
By Robert Renison, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JOSEPH M. ADAMS, ADAMS & PHAM, APC; CATHERINE
MOSCARELLO; IP CONCEPTIONS; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RUDY RUPAK; PLANETHOSPITAL.COM, LLC

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Central Justice Center
700 Civic Center Drive West, Santa Ana, California 92701

CASE NUMBER:
*(Número del Caso):*
30-2014-00753377-CU-PN-CJC

Judge Sheila Fell

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ashton Watkins,1990 S. Bundy Dr.,#390,LA,CA 90025;Cherif Elsheik,11150 W. Olympic Blvd,LA,CA 90064
310-855-3904(tel.); 310-943-3896(fax)

| DATE: 10/28/2014 | ALAN CARLSON, Clerk of the Court | Clerk, by | , Deputy |
|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

Robert Renison

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): IP CONCEPTIONS

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
      ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
      ☐ other (specify):

4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit A page 4

Cherif Elsheikh       (SBN: 270389)
LAW OFFICES OF CHERIF ELSHEIKH
11150 West Olympic Blvd.
Los Angeles, California 90064
c.sheikhlaw@gmail.com

Ashton Watkins       (SBN: 235310)
LAW OFFICES OF ASHTON WATKINS.
1990 S. Bundy Drive, Suite 390
Los Angeles, California 90025
310-855-3904 (tel.)
310-943-3896 (fax)
ashton@watkinslawgroup.com

Attorneys for Plaintiffs Rudy Rupak and Planethospital.com, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
10/28/2014 at 06:32:31 PM
Clerk of the Superior Court
By Debbie Lachmann, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ORANGE

| | |
|---|---|
| RUDY RUPAK; PLANETHOSPITAL.COM, LLC, | Case No.   30-2014-00763377-CU-PN-CJC |
| Plaintiffs, | 1. BREACH OF FIDUCIARY DUTY |
| | 2. LEGAL MA' Judge Sheila Fell |
| v. | 3. CONSTRUCTIVE FRAUD |
| | 4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| JOSEPH M. ADAMS, ADAMS & PHAM, APC; CATHERINE MOSCARELLO; IP CONCEPTION; and DOES 1 through 25, inclusive, | 5. UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODE § 17200 et seq. |
| Defendants. | 6. TRADE SECRET MISAPPROPRIATION |
| | 7. ACCOUNTING |
| | 8. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| | 9. INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS |
| | 10. NEGLIGENT INFLICATION OF EMOTIONAL DISTRESS |

Plaintiffs Planethospital.com LLC and Rudy Rupak allege as follows:

1

## PARTIES AND GENERAL ALLEGATIONS

1.      At all times herein mentioned, Plaintiff Planethospital.com ("PH") and Plaintiff Rudy Rupak ("Rupak") (hereinafter PH and Rudy are collectively referred to as "Plaintiffs" or as their respective names "PH or Rudy").

2.      Plaintiff Rudy Rupak ("Rupak") is an individual, is and, at all times herein mentioned, was an individual residing in the County of Los Angeles, State of California, and conducting business in the County of Los Angeles, State of California.

3.      Plaintiff Planethospital.com LLC ("PH") is a limited liability company organized and existing under the laws of the State of California with its principal place of business located in Los Angeles County. During all relevant times PH was authorized to conduct business in the State of California

4.      Defendant JOSEPH MARTIN ADAMS, ESQ. ("Adams") also known as Joe Adams, an individual, was doing business and holding himself out as a licensed and reputable attorney, able to practice law in California, and affiliated with the ADAMS & PHAM, APC law firm, as a partner. Adams held himself out as possessing that degree of skill and learning and ability common to legal practitioners in California.

5.      Defendant ADAMS & PHAM, APC ("AP") is a California Professional Corporation organized and existing under the laws of the State of California with its principal place of business located in Costa Mesa, California. ADAMS & PHAM, APC at all relevant times are authorized to conduct business in the County of Los Angeles, State of California.

6.      Defendant Catherine Moscarello ("Moscarello") is an individual. She was formerly a licensed attorney in California. However, her license was suspended for engaging in at least thirty acts of misconduct. Moscarello was doing business in California. Moscarello was providing legal services without a license through Defendants Adams and ADAMS & PHAM, APC. Adams and Moscarello are involved in an intimate relationship. Indeed, Adams and Moscarello hold themselves out to be husband and wife.

//

2

7.    Defendant IP Conception ("IP") is a limited liability company. IP is doing business in the County of Orange, State of California.

8.    The true names and capacities, whether individual or corporate, associate or otherwise of DOES 1 through 25, inclusive ("Doe Defendants"), are unknown to Plaintiffs, who therefore sue said Does Defendants by such fictitious names. Plaintiffs are informed and believes, and based thereon alleges, that Defendant that each of the fictitiously named Doe Defendants is in some manner, means or degree connected with the matters herein alleged, is in some manner responsible for the events and happenings herein referred to, and is liable to Plaintiffs thereon. Plaintiffs will move to amend this Complaint to show such defendants' true name and capacities when the same have been ascertained.

9.    Together AP, Adams, Moscarello, IP and DOES 1 through 25, inclusive, are collectively referred to as "Defendants."

10.   At all times mentioned, each of the Defendants, and each of them, were and are the agents, servants, employees, principals, officers, directors, partners, representatives, parents, subsidiaries, successor-interest, or co-conspirators of each of the remaining defendants, and in such capacity participated in the acts or conduct alleged herein. Defendants, and each of them, are the alter ego of all other Defendants, and each of them, and that there is such a unity of interest between them that separate personalities of the persons and/or entities named and these separate entities and individuals do not exist. Therefore, if the acts of the Defendants, and each of them, are treated as only one defendant alone, an equitable result will follow, as the other defendants will escape responsibility for any tortuous or fraudulent conduct complained of herein.

## JURISDICTION AND VENUE

11.   Jurisdiction is proper because Plaintiffs do business in the County of Orange.

12.   Jurisdiction is proper because Defendants conduct business in the County of Orange, State of California

13.   Jurisdiction is proper because the transaction and occurrences giving rise to this lawsuit occurred in the County of Orange, State of California.

## FACTUAL BACKGROUND

3

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 7

1    14.    PH is a business headquartered in the County of Los Angeles, State of California

2    that has rendered medical tourism, which includes surrogacy services for almost eight (8) years.  Rupak is

3    a majority interest holder of PH.  Plaintiffs are pioneers of the surrogacy business.

4    15.    Plaintiffs invested extensively in a system consisting of software, call center

5    interface, and specific techniques and methods, all of which are unique to its business and provide

6    substantial business advantage for Plaintiffs PH and Rupak.  At all times herein mentioned, PH maintained

7    a secret electronic file containing all of its clients' names, potential investors and contact information

8    within its practice management system named "Planet Hospital CRM" and related software (collectively

9    "Master Client List" and/or "CRM") as well as pricing information and billing data.  The Master Client

10   List and pricing information and billing data that (1) derives independent economic value, actual and

11   potential, and provides a substantial business advantage to Planet Hospital, from not being generally

12   known to the public or other persons who can obtain economic value from its disclosure or use; and (2) is

13   the subject of extensive efforts by Planet Hospital that are reasonable given the nature of the surrogacy

14   industry to maintain its secrecy.

15   16.    Plaintiffs are greatly damaged whenever their business model is duplicated; its

16   reputation maligned in the surrogacy community; its trade secrets misappropriated; or when competitors

17   offer the surrogacy services to past, existing or prospective customers of Plaintiffs. Aside from possibly

18   violating intellectual property rights and/or regulations and competing unfairly, such business practices are

19   inherently misleading and confusing to customers.  Plaintiffs' are substantially damaged by a competitor

20   when it seeks to steal customers through deception and slander.  Further, if Plaintiffs potential customers

21   use the competitor's services, or if these customers are discouraged to use any competing service due to

22   tactics involving defamation and slander, would put Plaintiff out of business.  Plaintiffs' efforts and

23   business would effectively be stolen by a competitor.

24   17.    On or about August 28, 2013, Plaintiffs hired Adams and AP as its attorneys.

25   During this engagement Defendants provided legal advice, representation, and services on multiple legal

26   matters. Among other assignments, Plaintiffs hired Adams and AP to handle customer complaints.

27   Adams and AP assigned Moscarello to help them with this task. She reviewed the files, contacted the

28

4

PLAINTIFFS' COMPLAINT FOR DAMAGES

1    disgruntled customers and purportedly took steps to resolve these disputes with the customers.  Marcarello

2    also offered legal advice to Plaintiffs during a time when she was not licensed to practice law. She

3    concealed her activities by offering that service through AP and Adams. Among other things Moscarello at

4    times identified herself as an attorney, she re-wrote contracts and advised clients of their legal rights.

5          18.    Defendants also personally represented Rupak on a number of different matters

6    including, but not limited to his individual interest in PH.

7          19.    At the approximate time of hiring of Adams and AP, Moscarello in or about August

8    2013, started providing services to Plaintiffs. In or about November 2013, Plaintiffs discovered that

9    Moscarello was copying Plaintiffs' highly confidential and proprietary information including, but not

10    limited to, Plaintiffs' Master Client List and investor information. Further, Defendants Moscarello and

11    Defendant Adams took from PH approximately $25,000 worth of PH's embryos.

12          20.    In the fall of 2013, Rhy Morrigan, PH's former patient who had a dispute with

13    Plaintiffs, made a settlement offer to Plaintiffs. She communicated that offer to Defendants herein.

14    Plaintiffs responded with a counter offer. However, Defendants deliberately concealed that offer from

15    Rhy Morrigan. Through deceit and concealment Defendants purposely induced Rhy Morrigan to

16    believe that Plaintiffs did not want to settle. This made Rhy Morrigan infuriated. As a result, she

17    continued to attack Plaintiffs in various public forums.

18          21.    On September 24, 2014, Plaintiffs discovered that Defendants did not communicate

19    the settlement offer to settle the dispute with Rhy Morrigan.

20          22.    Plaintiffs also discovered later that Moscarello had posted false and defamatory

21    statements about Plaintiffs online. She also posted information from customer complaints given to Adams

22    and AP during the course and scope of their representation. Moscarello, AP and Adams used information

23    learned during their representation of Plaintiffs in these online reviews and comments. It was further

24    discovered that Moscarello, Adams and AP urged and assisted Plaintiffs' patients to pursue complaints

25    against Plaintiffs. Defendants also disclosed highly confidential information learned through their

26    representation of Plaintiffs. For example, Defendants disclosed, in or about May of 2014, to Plaintiffs'

27    former clients (who Plaintiffs have a dispute with) confidential information regarding Plaintiffs' bank

28

PLAINTIFFS' COMPLAINT FOR DAMAGES

1   accounts.  Plaintiff also discovered that Moscarello and Adams had started a competing company called IP

2   CONCEPTIONS while Defendants were still Plaintiffs' attorneys.

3         23.   At the same time Defendants were making these statements online, Moscarello

4   used the information she stole from Plaintiffs to open a competing business called IP CONCEPTIONS. At

5   the time IP Conceptions was formed Defendants were Plaintiffs' attorneys. AP and Adams assisted

6   Moscarello in forming this company.

7         24.   Defendants devised a plan to divert Plaintiffs' business to themselves and

8   simultaneously put Plaintiffs out of business, by using proprietary and confidential information they had

9   acquired from Plaintiffs during Defendants' representation, including client contact information that they

10   were entrusted with as employees and/or agents.  Defendants planned to secretly perform surrogacy

11   services at their newly formed IP CONCEPTIONS, as a direct competitor of Plaintiffs, by initially building

12   their client base by contacting and marketing to Plaintiffs' patients and while simultaneously defaming

13   Plaintiffs in various public online forms. Defendants further urged Plaintiffs' clients to pursue complaints

14   against Plaintiffs.

15         25.   Defendants also agreed and conspired among themselves to gradually take many of

16   Plaintiffs' vendors, existing and incoming prospective patients to IP CONCEPTIONS and perform the

17   surrogacy services for their personal profit, by falsely misrepresenting to Plaintiffs' existing and

18   prospective clients and to the public that Plaintiffs were: (a) providing inferior services; (b) committing

19   fraud; (c) providing services under unsafe conditions while referring the same patients to

20   IPCONCEPTIONS.

21         26.   Defendants also contacted potential investors and urged them not to invest with

22   Plaintiffs, while Defendants sought the same investors to invest in IP Conceptions.

23         27.   Defendants made copies of Plaintiffs Master Client List, vendor list and its practice

24   management system, pricing data, billing data, scheduling software, potential investors and other computer

25   data. At all times relevant hereto, these items belonged to Plaintiffs and that these items constitute

26   Plaintiffs' proprietary and confidential information and constitute trade secrets under California law.

27   Defendants used this information to start a competing business and simultaneously defame Plaintiffs on

28

6

PLAINTIFFS' COMPLAINT FOR DAMAGES

1   various different public forms to put Plaintiffs out of business.

2        28.   Defendants willfully set out to duplicate Plaintiffs' unique business operations and

3   sought to induce potential customers by offering services in a similar style to that of Plaintiffs services and

4   by directly defaming Plaintiffs' reputation with information they wrongfully obtained.   Prior to working

5   for PH Defendants had no knowledge about the surrogacy process.

6        29.   Defendants continue to unlawfully profit from Defendants' wrongful conduct, as

7   well as seeking to directly tarnish Plaintiffs' reputation and goodwill, and that Plaintiffs continue to be

8   damaged due to the loss of its business.

9

10                        FIRST CAUSE OF ACTION
                            Breach of Fiduciary Duty
11        (Against all Defendants and DOES 1-25, except Defendant IP Conception)

12

13        30.   Plaintiffs incorporate by reference paragraph 1 through 29, inclusive, as if fully set

14   forth herein.

15        31.   Defendants and Plaintiffs were in a fiduciary relationship. As attorneys, Defendants

16   had strong obligations to act with loyalty and fairness with Plaintiffs. Defendants' obligations are

17   embodied in, among other places, the Business and Professions Code and Rules of Professional Conduct.

18        32.   Defendants breached their duties and obligations by, among other things, using

19   confidential client information to their benefit and to the detriment of plaintiffs; posting false, defamatory

20   and confidential information learned during their representation to online forums; assisting Plaintiffs'

21   former patients to lodge complaints against Plaintiffs.

22        33.   Defendants' acts and omissions were a substantial factor in causing Plaintiffs'

23   harm.

24        34.   As a proximate result of Defendants breach of their fiduciary duties, Plaintiffs

25   have suffered compensatory damages in an amount to be proven at trial.

26        35.   Defendants are guilty of malice, oppression or fraud, entitling Plaintiffs to an award

27   of exemplary damages, in addition to compensatory damages.

28

---

7

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 11

## SECOND CAUSE OF ACTION
### Legal Malpractice
(Against all Defendants and DOES 1-25, except IP Conceptions)

36.     Plaintiffs incorporate by reference paragraph 1 through 35, inclusive, as if fully set forth herein.

37.     As set forth herein above, an attorney-client relationship existed between Plaintiffs, on the one hand, and Adams, AP, and Moscarello, on the other hand.

38.     Defendants owed Plaintiffs a duty to exercise reasonable care, skill and diligence and to act competently in the rendering of legal services.

39.     By their acts and omissions as alleged herein, Defendants breached their duties to exercise reasonable care, skill and diligence and to act competently, failed to use the care and skill ordinarily exercised in like cases by reputable members of their profession reasonable diligence and their best judgment in the exercise of their skill and the accomplishment of their learning in an effort to accomplish the best possible result for Plaintiffs.

40.     As a proximate result of Defendants' breach of their duties, Plaintiffs suffered compensatory damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Constructive Fraud
(Against all Defendants and DOES 1-25, except IP Conception)

41.     Plaintiffs incorporate by reference paragraphs 1 through 40, inclusive, as if fully set forth herein.

42.     The relationship between the attorney and client is a fiduciary relationship of the very highest character and binds the attorney to the most conscientious fidelity. Because of its role as attorneys for Plaintiffs, Defendants owed, at all times relevant hereto, a fiduciary duty to Plaintiffs to act with the utmost care, good faith and honesty in protecting Plaintiffs' interest with respect of the attorney-client representation.

8

1         43.     By virtue of the attorney-client relationship that existed between Plaintiffs and

2 Defendants, Defendants owed Plaintiffs a fiduciary duty, and by virtue of Plaintiffs having placed

3 confidence in the fidelity and integrity of Defendants and in entrusting Defendants with Plaintiffs'

4 representation in connection with the myriad of legal issues and providing them with highly confidential

5 information, a confidential relationship existed at all times between Plaintiffs and Defendants.

6         44.     Despite having voluntarily accepted the trust and confidence of Plaintiffs,

7 Defendants abused the trust and confidence as alleged herein above, with the intent to deceive Plaintiff.

8         45.     By their acts and omissions, Defendants breached the fiduciary duties owed to

9 Plaintiffs, as alleged above, and as follows:

10                a) Defendants not only failed to protect Plaintiffs' interest in connection with their

11                representation, but rather used confidential information obtained from their

12                representation for their own financial benefit;

13                b) Defendants drafted various agreements in such a manner as to further their own

14                interest and to protect Defendants from liability, while detrimentally affecting

15                Plaintiffs' rights and exposing Plaintiffs to liability;

16                c) Defendants urged Plaintiffs clients to filed actions against Plaintiffs;

17                d) Defendants wrongfully defamed Plaintiffs in various public forms in order to put

18                Plaintiffs out of business and for their financial benefit.

19                e) Defendants unlawfully obtained confidential information through their

20                representation and opened a competing business against Plaintiffs;

21                f) Defendants intentionally failed to communicate Plaintiffs' offers to settle;

22                g) Defendants failed to advise Plaintiffs that Defendant was only representing their

23                own interest and misled Plaintiffs into believing that Defendants were protecting

24                Plaintiffs' interest, in violation of, among others, various California Rules of

25                Professional Conduct 3-310 and 3-600;

26                h) Defendants failed to put Plaintiffs' interest ahead of their own and engaged in

27                self-dealing;

28

9

Exhibit A page 13

46.   Plaintiffs reasonably relied upon Defendants, as set forth hereinabove.

47.   As a proximate result of Defendants' constructive fraud, Plaintiffs suffered compensatory damages in an amount to be proven at trial.

48.   Defendants are guilty of malice, oppression or fraud, entitling Plaintiffs to an award of exemplary damages, in addition to compensatory damages.

### FOURTH CAUSE OF ACTION
**Breach of the Implead Covenant of Good faith and Fair Dealing**
(Against all Defendants and DOES 1-25, except Defendant IP Conception)

49.   Plaintiffs incorporate by reference paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.   In every contract between an attorney and client, there exists an implied covenant of good faith and fair dealing that the attorney will not do anything to impair the client's rights to receive the benefits under the contract.

51.   By their acts and omissions as alleged herein above, Defendants breached the implied covenant of good faith and fair dealing.

52.   As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Unfair Competition Under California Bus & Prof. Code Section 17200 et seq.**
(Against all Defendants and DOES 1-25)

53.   Plaintiffs incorporate by reference paragraphs 1 through 52, inclusive, as if fully set forth herein.

54.   By engaging in the conduct above, Defendants committed unfair business practices as defined in California Business & Professions Code, Section 17200 et seq.

55.   Defendants acquired proprietary and confidential information, and access to Plaintiffs' software programs, and in the course of competing with Plaintiffs, Defendants wrongfully used such confidential and proprietary information, including a Master Client List, software programs, stolen embryos to gain a competitive advantage over Plaintiffs and for the benefit of themselves and their

10

1   business, which was wrongfully obtained and  to which they are therefore not entitled.

2      56.   Defendants have wrongfully misappropriated Plaintiffs' confidential and

3   proprietary information, reputation and goodwill, through their representation as Plaintiffs' attorneys.

4   Such actions are likely to mislead the public and constitute unfair competition in violation of California

5   *Business & Professions Code*, § 17200 *et. seq.*

6      57.   Defendants committed acts of unfair competition with respect to Plaintiffs

7   including, but expressly not limited, to the following:

8      a.   Misinforming Plaintiffs' current and past clients that Plaintiffs' facilities and staff

9          were responsible for fraud.  Defendants subsequently directed these patients to

10          IPCONCEPTIONS;

11      b.   Making unauthorized referrals of Plaintiffs' clients, both existing and prospective,

12          to IPCONCEPTIONS;

13      c.   Disclosing, using and otherwise misappropriating Plaintiffs' proprietary and

14          confidential information;

15      d.   Defaming Plaintiffs in a public forum;

16      e.   Unfairly contacting for business purposes and soliciting Plaintiffs' clients;

17      f.   Maligning Plaintiffs' reputation;

18      g.   Breaching the duty of confidentiality;

19      h.   Breaching the duty of loyalty;

20      i.   Failing to make full written disclosure of conflicting interest to Plaintiffs and to

21          obtain Plaintiffs' informed written consent in violation of California Rules of

22          Professional Conduct;

23      j.   Failing to put Plaintiffs' interests ahead of their own and engaged in self-dealing.

24      58.   The wrongful conduct of Defendants described herein above constitutes unfair

25   competition and deceptive and unfair trade practices contemplated and prohibited by California *Business &*

26   *Professions Code*, § 17200 *et. seq.* Further, the Defendants' conduct has caused them to become unjustly

27   enriched, and Defendants should have to pay restitution of all sums inappropriately obtained to the

28

---

11

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 15

1   detriment of Plaintiffs.

2       59.   The aforementioned conduct of Defendants was intentional on the part of the

3   Defendants to deprive Plaintiffs of property and harm their reputations.  This was despicable conduct

4   which has subjected Plaintiffs to unjust hardship in conscious disregard of Plaintiffs' rights.

5       60.   Also, as a direct and proximate result of Defendants' conduct alleged above, an

6   amount of restoration of money or property acquired by unfair competition has yet to be ascertained but

7   Plaintiffs are informed and believe, and thereon allege, is well in excess of the jurisdictional limits of this

8   Court.

9       61.   Moreover, the unfair competition by Defendants to convert Plaintiffs' business, as

10  described above, will likely occur and continue so that further harm and irreparable injury will result to

11  Plaintiffs from Defendants' wrongful acts unless enjoined and restrained by this court in accordance with

12  California *Business & Professions Code*, § 17200 *et. seq*

13      62.   Plaintiffs have no adequate remedy at law for the injuries it will suffer in that there

14  is no way to quantify the extent of the impact on Plaintiffs' present and future business and reputations as

15  result of Defendants' misconduct.

16      63.   Plaintiffs, therefore, also request an order enjoining Defendants from further

17  continuing their unfair competition and unfair business practices, as described herein and from using

18  Plaintiffs' proprietary and confidential information.

19      64.   Plaintiffs are entitled to obtain injunctive relief and restoration of money acquired

20  by unfair competition pursuant to California Business & Professions Code, Sections 17070 and 17203.

21

22                    **SIXTH CAUSE OF ACTION**
                **Trade Secret Misappropriation (Civil Code 3426 et.seq.)**
23                  **(Against all Defendants and DOES 1-25)**

24

25      65.   Plaintiffs incorporate by reference paragraphs 1 through 64, inclusive, as if fully set

    forth herein.

26      66.   At all relevant times, everything Defendant Moscarello, with the assistance of her

27  spouse, Adams and his law firm AP, acquired by virtue of their agency, employment and/or business

28

                                12

Exhibit A page 16

1   relations with Plaintiffs and Plaintiffs' affiliates, whether during or after expiration of the term of her

2   agency and/or employment, including without limitation, PH's Master Client List, vendors, doctors,

3   scheduling system, billing data, clinics as well as software programs belonging exclusively to PH.

4       67.    At all relevant times, PH's Master Client List, vendor information, software system

information regarding PH's business model derived independent economic value from not being generally

5   known by the public or in the surrogacy industry.

6       68.    At all relevant times, Plaintiffs' Master Client list vendor information, software

7   system, information regarding PH's business model were the subject of efforts by Plaintiffs to maintain

their secrecy that were reasonable under the circumstances.

8       69.    At all relevant times, Defendants had a duty to maintain the secrecy of Plaintiffs'

9   Master Client List, pricing data, software system, business forms and billing data as well as Plaintiffs'

10   software programs, and not to use it or disclose it. These duties arose from, among other things, the fact

11   that they were notified, and/or were aware that this information constituted Plaintiffs' trade secrets and/or

12   constituted Plaintiffs' confidential and proprietary information.

13       70.    Defendants used or disclosed Plaintiffs' proprietary information.

    71.    Defendants used or disclosed Plaintiffs' Master Client List, pricing data,

14   scheduling system, business forms and billing data as well as Plaintiffs software programs without

15   Plaintiffs knowledge or consent, by, among other things, disclosing it to defendant IP Conception

16   and/or using it in connection with IP Conceptions sales efforts.

17       72.    The misappropriation by Defendants have caused them to become unjustly enriched

18   and Defendants should have to pay compensatory damages of all sums inappropriately obtained to the

19   detriment of Plaintiffs pursuant to California Civil Code §3426. Additionally, due to these willful and

20   malicious acts Defendants should pay exemplary damages pursuant to California Civil Code §3426.3(c).

21       73.    As a proximate result of the conduct alleged above, Plaintiffs have been damaged

22   in an amount which has yet to be ascertained but which is believed to be in excess of the jurisdictional

23   limits of this Court. Plaintiffs will seek leave to amend this Complaint when the true nature and extent of

24   its damages are ascertained.

25       74.    Moreover, Defendants continue to convert Plaintiffs' property and clients, as

26   described above, so that further harm will result to Plaintiffs from Defendants' wrongful acts, and Plaintiffs

27   will suffer irreparable injury absent injunctive relief. Therefore, Plaintiffs also request an order enjoining

28

13

PLAINTIFFS' COMPLAINT FOR DAMAGES

1    Defendants from further use of Plaintiffs' clients and proprietary and confidential information, including,

2    without limitation, Plaintiffs' Master Client List, billing data, pricing data and its software. Furthermore,

3    Plaintiffs are entitled to recover attorney fees and costs, pursuant to California Civil Code §3426.4.

4

### SEVENTH CAUSE OF ACTION
#### Accounting
#### (Against all Defendants and Does 1 to 25)

6       75.    Plaintiffs incorporate by reference paragraphs 1 through 74, inclusive, as if fully set

7    forth herein.

8       76.    Plaintiffs are informed and believe, and based thereon allege that in or about 2013,

9    Defendants, because of their fiduciary relationship with Plaintiffs, as attorney and/or employees rendering

10    related legal and managerial services on behalf of Plaintiffs' executive officers, began to make unauthorized

11    referrals of Plaintiffs' business and clients to themselves and to their business, IP Conception, through

12    misappropriation of Plaintiffs' proprietary and confidential information, as well as Plaintiffs' software, and

13    through misrepresentations and slanderous statements to Plaintiffs and its clients; and fraudulently

14    performing services for Plaintiffs' existing and prospective clients using the proprietary and confidential

15    information they had acquired from Plaintiffs, as well as the information and software Plaintiffs' had

16    entrusted them with. Having done so, Plaintiffs are unable to ascertain the amount of monies that rightfully

17    should have been paid to Plaintiffs but instead was misappropriated by all the Defendants.

18       77.    The amount of monies that rightfully should have been paid to Plaintiffs but

19    instead was misappropriated by Defendants and IP Conception were paid to Defendants is unknown to

20    Plaintiffs and will not be ascertainable without an accounting of such monies by Defendants.

21       78.    By filing this Complaint, Plaintiffs have demanded an accounting, but Defendants

22    have failed and refused, and continue to fail and refuse to account to Plaintiffs, as requested.

23    //

24    //

25    //

26    //

27    //

28

14

### EIGHTH CAUSE OF ACTION
#### Intentional Interference with Prospective Economic Advantage
(Against all Defendants and DOES 1 to 25)

79.     Plaintiffs incorporates by reference paragraphs 1 through 78, inclusive, as if fully set forth herein.

80.     Plaintiffs have an economic relationship with its customers who use its Services. These relationships entail the probability of future benefit and advantage to Plaintiffs, that is, the opportunity to render its Services and obtain new as well as repeat customers for such Services through marketing, word of mouth referrals, etc. Further Plaintiffs have an economic relationship with investors who planned on investing in PH. These relationship entail the probability of future benefit and advantage to Plaintiffs, that is, the opportunity derived from such investments.

81.     Defendants knew of the existence of the advantageous economic relationship between Plaintiffs and its clients, prospective clients, investors and potential investors at all relevant times. Plaintiffs are informed and believe, and based thereon allege that beginning in or around late 2013 and continuing to date, Defendants intentionally interfered with, and caused disruption of said relationships with Plaintiffs' clients, prospective clients, investors and potential investors by; (1) making unauthorized referrals of Plaintiffs clients, both existing and prospective, to defendant IP Conception; (2) unfairly contacting for business purposes and soliciting Plaintiffs' clients, thereby jeopardizing the clients, accounts and  business of Plaintiffs; (4) making defamatory and slanderous statements on public forms; (5) maligning the established reputation of Plaintiffs and the provision of services provided by Plaintiffs; and (6) unfairly contacting investors and potential investors and urging them not to invest with Plaintiffs.

82.     But for Defendants' wrongful and intentional interference, Plaintiffs would have maintained its valuable customer and investor relationships to its economic advantage and benefit.  The mere fact that customers and investors do not want a business relationship with Plaintiffs is indicative of actual disruption of Plaintiffs valuable relationships with its customer base and investors. The "disappointment" and "considerable emotional distress" involved makes it likely that Plaintiffs has been denied prospective economic benefits.

15

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 19

83.    As a direct and proximate result of the foregoing intentional interference by Defendants, Plaintiffs have suffered immediate and irreparable injury, economic loss, harm and damage subjecting Defendant to pay damages pursuant to California Civil Code §3333.

84.    In their intentional interference with Plaintiffs' prospective economic advantage, as alleged above, the Defendants acted despicably and continue to act with oppression, fraud and malice, and in willful disregard of the rights of Plaintiffs, also entitling Plaintiffs to punitive damages pursuant to California Civil Code §3294.

85.    As a direct and proximate result of Defendants' despicable conduct and actions, and each of them, Plaintiffs have been damaged in an amount which has yet to be ascertained but Plaintiffs are informed and believe, and thereon allege, is well in excess of the jurisdictional limits of this Court.

86.    These acts have actually interfered with or disrupted Plaintiffs' relationships with customers, potential customers, investors, and/or potential investors who use and/or would have used Plaintiffs Services and/or would have invested in Plaintiffs, so that existing and potential business created by Plaintiffs efforts have been diverted to the Defendants, Plaintiffs customer base has been eroded, and Plaintiffs' reputation and goodwill have been injured, all entitling Plaintiffs to recover actual damages and to obtain injunctive relief.

87.    Moreover, Defendants continue to interfere with Plaintiffs' existing and prospective business, as described above, so that further harm will result to Plaintiffs from Defendant's wrongful acts, and Plaintiffs will suffer irreparable injury absent injunctive relief.  Therefore, Plaintiffs also request an order enjoining Defendants from further use of Plaintiffs' proprietary and confidential information.

## NINTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
(Plaintiff Rupak against all Defendants and DOES 1 to 25, except Defendant IP Conception)

88.    Plaintiff Rupak incorporates by reference paragraphs 1 through 87, inclusive, as if fully set forth herein.

89.    By virtue of Defendants' unlawful scheme to obtain Plaintiff Rupak's

16

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 20

1  business, and ruin his reputation has caused Plaintiff Rupak severe mental anguish and distress.

2  Defendants have no cause to reasonably believe that Defendants would find it acceptable for them to

3  commit and perpetrate such a deceptive and egregious tactic to obtain and put Plaintiffs out of

4  business and ruin their reputation.

5        90.    Defendants, in committing the acts herein alleged, intended to inflict severe

6  emotional distress on Plaintiff Rupak and/or acted in conscious disregard of the almost certain result

7  of causing Plaintiff Rupak severe emotional distress.

8        91.    The wrongful acts of Defendants have in fact directly and proximately caused

9  and continue to cause Plaintiff Rupak to suffer mental anguish and severe emotional distress,

10  generally damaging Plaintiff.

11        92.    Defendants committed the acts alleged herein with knowledge of their

12  wrongfulness, and with the intent to injure Plaintiff Rupak, in conscious disregard of their legal

13  obligation to refrain from such acts and/or with conscious disregard of Plaintiffs rights. In

14  committing such acts, Defendants are guilty of oppression, fraud and malice, entitling Plaintiff Rupak

15  to an award of exemplary and punitive damages.

16

17                  **TENTH CAUSE OF ACTION**
               **Negligent Infliction of Emotional Distress**

18  (Plaintiff Rupak Against all Defendants and DOES 1 to 25, except Defendant IP Conception)

19        93.    Plaintiff Rupak incorporates by reference paragraphs 1 through 92, inclusive, as if

20  fully set forth herein.

21        94.    Defendants owed a duty to Plaintiff Rupak. Defendants breached this duty to the

22  Plaintiff Rupak by failing to competently represent Plaintiffs.

23        95.    Plaintiff Rupak spent the last eight (8) years pioneering the surrogacy industry and

24  12 years in medical tourism. Because of Defendants' negligence in their representation, and their overt

25  actions to ruin Plaintiff Rupak and PH's reputation in the surrogacy industry. Plaintiff Rupak's reputation

26  was harmed such that he was unable to find employment. Plaintiff Rupak valued his name and reputation

27

28

PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 21

1   and the allegations and slanderous nature of Defendants' statements, made worse (as Defendants they

2   directly and/or indirectly came from those who owe a fiduciary duty to Plaintiff Rupak and PH), because

3   they were made to the public challenged his reputation. This caused severe mental and emotional distress

4   to Plaintiff Rupak. Plaintiff Rupak was insulted and humiliated by various statements made on public

5   websites. Plaintiff Rupak was further harmed by the damage to PH which was caused by Defendants.

6        96.   Due to the negligence of Defendants, Plaintiff Rupak suffered from and continues

7   to suffer from, severe anxiety, loss of sleep, and disturbance of his daily life and normal activities, and

8   Defendants' negligence has impacted his health and well bring. Defendants' negligence has caused

9   Plaintiff Rupak embarrassment, humiliation, anxiety over losing his way of life, distress over losing his

10   reputation and business and distress for having to clear his name.

11        97.   It was reasonably foreseeable to Defendants that their breach of the standard of

12   care would result in challenges to Plaintiff Rupak's reputation and his way of life and cause severe

13   emotional distress.

14

15   **WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

16     1.  For general damages of at least $1,000,000;

17     2.  For special damages of at least $1,000,000;

18     3.  For an order finding defendants have been unjustly enriched by their wrongful acts and

19        omissions;

20     4.  For attorney's fees and costs pursuant to contract or statute;

21     5.  For punitive damages in amount to be proven at trial;

22     6.  For injunctive relief;

23     7.  For costs of suit herein incurred; and

24     8.  For such other and further relief as the court may deem just and property.

25   //

26   //

27   //

28   //

---

18

PLAINTIFFS' COMPLAINT FOR DAMAGES



1
2    DATED:        October 28, 2014              *Ashton Watkins*
3                                               _____
4                                               Ashton Watkins, Esq.
                                                Cherif Elsheik, Esq.
5                                               Attorneys for Plaintiffs,

6    REQUEST FOR JURY TRIAL

7    DATED:        October 28, 2014
8
9                                               *Ashton Watkins*
10                                              _____
11                                              Ashton Watkins, Esq.
                                                Cherif Elsheik, Esq.
12                                              Attorney for Plaintiffs
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                      19
                        PLAINTIFFS' COMPLAINT FOR DAMAGES

Exhibit A page 23

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

L1200 (Rev. February2008)

Page 1 of 4

Exhibit A page 24

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

### ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

**BENEFITS OF ADR.**

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.**  A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.**  When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.**  In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.**  ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.**  In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.**  Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

**DISADVANTAGES OF ADR.**

ADR may not be suitable for every dispute.

**Loss of protections.**  If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

L1200 (Rev. February2008)

Exhibit A page 25

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.** Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.** In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate.** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate.** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.** In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate.** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate.** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.** In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

Exhibit A page 26

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate.**   Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May Not Be Appropriate.**   Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.**  Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials.  Sometimes parties will try a combination of ADR types.  The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Institute for Conflict Management (714) 288-5600
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198
- Fair Housing Council of Orange County (714) 569-0827

For information on the Superior Court of California, County of Orange court ordered arbitration program, call (714) 834-3774 or refer to Local Rules 360 and 446.

The Orange County Superior Court is offering pilot programs for Civil Mediation and Early Neutral Evaluation (ENE) for civil cases filed at the Central Justice Center.  For the Civil Mediation pilot program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session.  For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session.  Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org, or by calling (714) 834-5309.

Exhibit A page 27

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address):* | FOR COURT USE ONLY |
|---|---|

Telephone No.:            Fax No. (Optional):
E-Mail Address (Optional):
ATTORNEY FOR *(Name):*       Bar No.:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
**JUSTICE CENTER:**
☑ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor - Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13th Street, Westminster, CA 92683-0500

**PLAINTIFF/PETITIONER:**

**DEFENDANT/RESPONDENT:**

| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s), _____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
    ☐ Under section 1141.11 of the Code of Civil Procedure
    ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

☐ Other (specify): _____

The ADR process must be completed no later than 90 days after the date of this Stipulation.

☐ Plaintiff(s)/Petitioner(s) and defendant(s)/respondent(s) further agree as follows:

_____

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____    _____    _____
                      (SIGNATURE OF PLAINTIFF OR ATTORNEY)      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____    _____    _____
                      (SIGNATURE OF DEFENDANT OR ATTORNEY)      (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use                           California Rules of Court, rule 3.221
L1270 (Rev February, 2008)